UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA., and
ILLINOIS NATIONAL INSURANCE
COMPANY,

        Plaintiffs,

v.

ALTICOR, INC., AMWAY
CORPORATION, and QUIXTAR,
INC.,

        Defendants.
_____/

Case No. 1:05-cv-15

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court to determine Plaintiffs National Union Fire Insurance Company of Pittsburgh, Pennsylvania and Illinois National Insurance Company's Motion for Summary Judgment and Defendants Alticor, Inc., Amway Corporation and Quixtar, Inc.'s Motion for Partial Summary Judgment. Briefing of the Motions is complete and oral argument is unnecessary in the Court's judgment.

**BACKGROUND**

This suit is a diversity suit between Michigan Defendants and Plaintiffs of other states. Plaintiffs are insurance companies that seek a declaration of law that they are not obligated under policies of insurance purchased by Defendants to provide a defense in a suit pending before the United States District Court for the Western District of Missouri, *Nitro Distribution, Inc. v. Alticor, Inc.*, 03-3290-CV-S-RED ("*Nitro* action" or "underlying action"). The parties simply dispute

whether the language of the pertinent insurance policies obligate the insurance companies to defend the *Nitro* action.

National Union issued several policies to Alticor, Inc. and/or its predecessor Amway Corporation. (Compl. ¶ 9.) Defendant Quixtar, Inc. (according to the Complaint) is a subsidiary of Alticor, Inc. (*Id.* at ¶ 4.) The National Union policies are: GL 915-72-10RA (Sept. 1, 1991 to Sept. 1, 1992); RM GL 326-51-08 (Sept. 1, 1992 to Sept. 1, 1993); RM GL 175-97-30 (Sept. 1, 1993 to Sept. 1, 1994); RM GL 319-85-63 (Sept. 1, 1994 to Sept. 1, 1995); RM GL 121-29-52 (Sept. 1, 1995 to Nov. 1, 1996); RM GL 143-79-37 (Nov. 1, 1996 to Nov. 1, 1997); RM GL 113-54-67 (Nov. 1, 1997 to Nov. 1, 1998); RM GL 612-23-20 (Nov. 1, 1998 to Nov. 1, 1999); RM GL 612-23-20 (Nov. 1, 1999 to Nov. 1, 2000); RM GL 612-23-20 (Nov. 1, 2000 to Nov. 1, 2001); and RM GL 612-23-20 (Nov. 1, 2001 to Apr. 1, 2002). (*Id.* at ¶ 9.)[1]

Illinois National issued two policies of insurance to Alticor, Inc.: RM GL 612-52-12 (Apr. 1, 2002 to Apr. 1, 2003); and RM GL 612-84-48 (Apr. 1, 2003 to Apr. 1, 2004). (*Id.* at ¶ 10.)

The *Nitro* suit was filed on August 5, 2003. (*Id.* at ¶ 11.) Alticor, Inc. requested coverage by letter of September 29, 2003. (*Id.*) National Union declined coverage by letter of July 5, 2004. (*Id.* at ¶ 12 & Ex. A.) This suit was then filed on January 6, 2005 seeking a declaration of non-coverage on behalf of the two insurance companies.

The underlying suit involves claims by Nitro Distributing, Inc., which is a tool company located in Springfield, Missouri. (Defs.' Ex. A, *Nitro* Compl. ¶ 3.) The *Nitro* complaint is stated in 165 numbered paragraphs and involves six counts of liability. (*Id., Nitro* Compl. 41-42.) Counts

---

[1] Defendants have sought partial summary judgment only under the 1997-1998 policy. (*See* Defs.' Mem. of Law, 1.)

I to IV allege anti-trust violations under the Sherman Act (15 U.S.C. §§ 1 & 2); Count V alleges tortious interference with prospective business relations; and Count VI alleges a civil conspiracy to monopolize and restrain trade, to misrepresent Amway's business, and to tortiously inference with Nitro's business expectancies. (*Id., Nitro* Compl. ¶¶ 132-65.)  Among the allegations of the Complaint which relate to Defendants' theory of coverage are the allegations that Alticor, Inc. and the other Defendants "undermin[ed] and/or disparag[ed]" the *Nitro* "Plaintiffs" (*Id., Nitro* Compl. ¶ 135((c)) and made "misrepresent[atations]" regarding "the tool and function business[.]" (*Id.*, Comp. ¶ 162(2).)  For the purpose of this Motion, Plaintiffs have referred to the policy language contained in the National Union 1991-1992 policy. (Defs.' Ex. B-1.) They have also cited pertinent excerpts from the other policies. (Defs.' Exs. C, B2-B13.) The pertinent language is as follows:

    1. Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

        b.    This insurance applies to:
        (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
        (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products, or services; . . .

    10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

        (a)    False arrest, detention or imprisonment;

        (b)    Malicious prosecution;

        (c)    The wrongful eviction from wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, and lord or lessor;

      (d)      <u>Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services</u>; or

      (e)      Oral or written publication of material that violates a person's right of privacy.

(Defs.' Ex. B-1 at 5 & 11.) (emphasis added)[2]

**<u>SUMMARY JUDGMENT STANDARDS</u>**

The parties' summary judgment motions are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of

---

[2]The definition of "advertising injury" is also pertinent, but is not quoted here since the analysis of that language, which depends on the meaning of the terms "slanders, libels or . . . disparages" does not alter the legal analysis stated. (*See* Defs.' Ex. B-1 at 9.)

the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **LEGAL ANALYSIS**

This is a diversity suit premised on the application of Michigan law (the places of business of the insured Defendants). Since these motions pertain to matters of state law, the Court must apply state law as determined by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If a state's highest court has not spoken to an issue, the Court must determine state law based on "all relevant data," including decisions of intermediate state courts, decisions of federal courts interpreting state law, case precedents from other states, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing cases). In this process, intermediate state court decisions are especially important unless the other data suggest that the state's highest court would not follow such decisions. *Id.* Any doubt concerning whether the underlying matter is a covered liability must be resolved in favor of the insured.

Under Michigan law, an insurer's duties to defend are broader than the duty to indemnify. *Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994). The duty to defend arises in instances in which coverage is even arguable, though the claim may be groundless or frivolous. *Id.* (citing cases). The duty to defend depends on the allegations of the underlying complaint; the duty arises if the allegations even arguably come within the policy coverage. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980). This is true

even if the underlying complaint contains some theories of liability which are not covered under the policy language. *Id.*

Notwithstanding the very generous Michigan standards applicable to the duty to defend, there is no coverage of the underlying complaint in this case and the duty to defend is not implicated. The six-count Complaint sounds under the Sherman Act, for anti-trust violations. The Complaint contains the related state law torts of intentional interference with prospective business advantage and civil conspiracy. These two state law theories, though, are related to the substance of the alleged anti-trust claims. While the Complaint does mention "disparagement" and "misrepresent[ation]," it does so only in the context of the anti-trust claims, *i.e.,* as legal jargon pertinent to anti-trust and not as a means of even arguably alleging a separate claim for libel, slander or product disparagement. There are no factual allegations from which one could conclude that the *Nitro* suit contemplated a claim for slander, libel or product disparagement. No slanderous or libelous statement is detailed, nor is a single instance of product disparagement described in the complaint.

The case law cited by the parties is largely inapposite since it involves cases and circumstances different from the present one. One pertinent case, though, is the Michigan Court of Appeals' unpublished decision in *Veterans of Foreign Wars v. Auto-Owners Ins. Co.*, 1999 W.L. 33444142 (Mich. Ct. App. May 25, 1999). In that case, the Michigan Court of Appeals said:

> Plaintiff first claims that VSI's tortious interference count against plaintiff potentially involves a personal or advertising injury as defined in the policy because to intentionally induce VSI employees to breach their employment contracts, plaintiff may possibly have disparaged VSI's goods, products or services. . . .
>
> VSI's tortious interference claim against plaintiff does not even arguably involve a personal or advertising injury as defined in the parties' insurance policy. The entirety of VSI's allegations of conduct by plaintiff related to tortious interference consists of the following statement: "That defendant [ ], ... [plaintiff], intentionally induced defendants [former employees] to breach their contract with [VSI]." This allegation

>neither explicitly alleges nor fairly implies that plaintiff disparaged VSI's goods, products, or services.  Furthermore, absolutely no indication or implication exists elsewhere within the instant record that plaintiff disparaged VSI's goods, products or services.  The trial court correctly observed that plaintiff provided it with no evidence that "would require an inference of disparagement on the part of" plaintiff.  In its argument that coverage applies, plaintiff relies strongly on the principle that the duty of an insurance company to provide a defense in an underlying tort action depends on the allegations in the complaint and extends to allegations that even arguably come within the policy coverage.  While we agree with this principle, we do not find it applicable to the instant case given the total lack of a basis from which to even argue that VSI's tortious interference allegations contemplate plaintiff's disparagement of its goods, products or services.  Therefore, we conclude that because no personal or advertising injury even arguably existed, defendant owed plaintiff no duty to defend against VSI's allegations.

*Id.* at \*4. (footnotes omitted.)

While this case is somewhat different from the *Veterans* case because the word "disparagement" is contained in the *Nitro* complaint, the substance of the *Nitro* complaint is the same in the sense that no actual allegation of product disparagement, slander or libel has been made. This Court must read complaints to determine their substance and meaning.  Idle legal jargon or legal conclusions posited in a separate context (the anti-trust context) are not a reason for conjuring an unpled legal claim.  The many pages and paragraphs of the complaint say much about anti-trust allegations.  They say nothing factually about product disparagement because no claim for product disparagement has been alleged.  In this context, the Court must conclude that the duty to defend and the narrower duty to indemnify have not been implicated.  *See also United National Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 450 (6th Cir. 1999).

## **CONCLUSION**

Therefore, Plaintiffs National Union Fire Insurance Company and Illinois National Insurance Company's Motion for Summary Judgment will be granted and Defendants Alticor, Inc., Amway

Corporation, and Quixtar, Inc.'s Motion for Partial Summary Judgment will be denied. Judgment shall issue consistent with this Opinion.

Dated in Kalamazoo, MI:                          /s/Richard Alan Enslen
September 12, 2005                             Richard Alan Enslen
                                                       Senior United States District Judge